AMERICAN EXPRESS CO. v. NORTH FT. WORTH UNDERTAKING CO.*
(No. 8141.)

(Court of Civil Appeals of Texas. Ft. Worth. July 3, 1915. Rehearing Denied Oct. 30, 1915.)

1. ACTION ⬤〜4—GROUNDS—ILLEGAL OR IMMORAL ACTS.

If plaintiffs, a firm of undertakers and embalmers, under circumstances of duress wrongfully extorted from B. unreasonable and unjust charges for the preparation and shipment of his father's dead body, they had no lawful claim to so much of the amount exacted as was unjust and unreasonable; and, where B. subsequently garnished the amount exacted while in the possession of an express company, with which it had been deposited for transmission to plaintiffs, plaintiffs could not complain that, but for the company's negligence in not transmitting the money promptly, it would have obtained possession of and enjoyed its ill-gotten gains.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 17–24; Dec. Dig. ⬤〜4.]

2. JUDGMENT ⬤〜944 — EVIDENCE — WEIGHT AND SUFFICIENCY.

In an action against an express company to recover money deposited with it by B. for transmission to plaintiffs and subsequently garnished by B., in which statutes of Wisconsin and the testimony of a practicing attorney as

to the laws of Wisconsin were introduced, evidence *held* to show that the judgment against plaintiffs on service by publication in the action in which the writ of garnishment was issued was a valid judgment under the laws of Wisconsin, though plaintiffs were sued in their firm name.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1783; Dec. Dig. ☞944.]

3. JUDGMENT ☞822—FOREIGN JUDGMENTS—CONSTITUTIONAL PROVISIONS.

If a Wisconsin court which rendered a judgment had jurisdiction under the Laws of Wisconsin over the subject-matter and obtained jurisdiction over the defendants, such judgment must, in the courts of Texas, be given all the force and effect that it has in Wisconsin, under Const. U. S. art. 4, § 1, providing that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1523–1525; Dec. Dig. ☞822.]

4. COURTS ☞511—COMITY—CONSTRUCTION OF FOREIGN STATUTES.

In construing the laws of another state, they will be given that construction and effect which is given them by the courts of final resort in the state where they were enacted.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1432; Dec. Dig. ☞511.]

5. PARTNERSHIP ☞200 — ACTIONS BY OR AGAINST FIRM—USE OF FIRM NAME.

To authorize a judgment in this state against a partnership, or its property, all the members of the partnership must be made parties, since suits can only be maintained by and against persons, natural or artificial, and a partnership is not considered as a person or a legal entity, but the lawmaking power may otherwise provide.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 369–371; Dec. Dig. ☞200.]

Appeal from Tarrant County Court; Charles T. Prewitt, Judge.

Action by the North Ft. Worth Undertaking Company against the American Express Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Thompson & Barwise, A. C. Wood, George Thompson, Jr., and G. W. Wharton, all of Ft. Worth, for appellant. Slay & Simon and Theodore Mack, all of Ft. Worth, for appellee.

CONNER, C. J. This suit was instituted in the county court of Tarrant county on the 13th day of August, 1909, by the North Ft. Worth Undertaking Company against the American Express Company, to recover the sum of $327.50, which it was alleged had been deposited with the express company for the use and benefit of the plaintiff, but which the express company had refused to deliver. It was alleged that the plaintiff company was a partnership composed of George L. Gause and S. D. Shannon and engaged in the business of undertakers and embalmers, and that as such, pursuant to instructions, had, on July 17, 1909, received, embalmed, and prepared for shipment the dead body of one Theodore Bokoski; that the shipment was to be made to Frank Bokoski, a son of

the deceased, at New London in the state of Wisconsin; that the money to cover the cost of the casket, preparation of the body, etc., amounting to $327.50, plus $47.50 for the express charges, had been deposited by said Frank Bokoski with the defendant's agent at New London for the plaintiff's use, after which the dead body was delivered to the defendant at Ft. Worth, Tex., and shipped, but that defendant had failed to deliver to plaintiff the money so deposited.

On September 6, 1909, the defendant express company answered to the effect that it had received the body of Theodore Bokoski and had transported and delivered it to Frank Bokoski at New London, Wis., who made deposit of the charges as plaintiff had alleged, but that within 24 hours after such delivery the said Frank Bokoski had instituted suit against the plaintiff company in the proper circuit court in Wisconsin, alleging that the charges made by the plaintiff company were excessive to the extent of $200, for which excess Frank Bokoski prayed judgment, at the same time duly causing the issuance and service of a writ of garnishment upon the defendant and its agent at New London, who was still in possession of the fund, theretofore deposited to plaintiff's use as stated. It was further alleged that the circuit court of Wisconsin had thus acquired jurisdiction over the defendant, and that the money claimed by plaintiff, in obedience to the laws of Wisconsin so requiring, had been deposited with the clerk of said circuit court to abide the result of the suit of Frank Bokoski. It was further alleged in defense that the plaintiff had been duly and regularly served with process in the cause pending in the Wisconsin court; that said cause would come up for trial in November following, and the prayer was that the present suit be held in abeyance until the Wisconsin case be determined, to the end that defendant should not be required to suffer a double recovery.

The record fails to show any further action of note until the 10th day of February, 1914, when the plaintiff herein filed its substitute or amended petition alleging substantially as in its original petition, with added averments to the effect that its delivery of the body of Theodore Bokoski at Ft. Worth was refused until the defendant gave its assurance that the deposit before mentioned had been made, and that said money would forthwith be transmitted from Wisconsin to plaintiff, and that the defendant company had negligently failed to so transmit said money, having on the contrary, through its agent, conspired with said Frank Bokoski to detain the fund until it could be seized under the process of the Wisconsin court.

On the same day, to wit, on February 10, 1914, the defendant filed its first amended answer in substance as before, with further

allegations to the effect that the Wisconsin suits had proceeded to judgment in favor of Frank Bokoski both against the plaintiff and against defendant as garnishee for the aggregate sum, including court costs, of $231.85, which, by virtue of said judgments, defendant had been compelled to pay into the registry of the Wisconsin court for the benefit of Frank Bokoski. This answer abounded in allegations of due notice to and service upon the plaintiff of the judicial proceedings in Wisconsin, and pleaded the judgments therein rendered in bar, pro tanto, of the plaintiff's demand. The balance of the fund, $137.50, the defendant tendered in open court, as it was alleged had been theretofore done, for plaintiff's use.

The case was submitted to the jury upon three special issues, in answer to which the jury found:

"First, that the defendant express company, receiving the money from Frank Bokoski, did not exercise reasonable diligence to transmit and deliver the same to the plaintiff company; second, that the money would not have been garnished if the defendant had exercised reasonable diligence to transmit and deliver same to plaintiff; and, third, that defendant's agent and agents were guilty of conspiracy and collusion with Frank Bokoski in holding or retaining the money in the possession of the express company, in order that the same might be garnished by Frank Bokoski."

The court on said findings of the jury entered judgment in favor of the plaintiff for $327.50, together with interest thereon from July 17, 1909, and the defendant has appealed.

[1] After a statement of the pleadings and essential facts of the case the first 90 pages of the appellant's brief relate, in one form or another, to the issues upon which the case was submitted, it being contended, among other things, that the evidence fails to sustain the finding that appellant was guilty of the negligence and conspiracy charged. While we find but little evidence, if any, to support these charges, the entire subject and all questions relating thereto are wholly immaterial in the view of the case that we have taken. It is true that there are cases holding, and correctly so, that a garnishee will not be protected by a judgment against him which is fraudulent in character, and which he has collusively aided a plaintiff to obtain. But this principle can have no just application here. The only fraud on the part of the appellant that is alleged, or of which there is a pretense of proof, is founded alone on the alleged fraud of appellant's agent at New London, Wis., in negligently failing or refusing to forthwith send the deposited fund to Texas, whereby Frank Bokoski was enabled to garnish and detain it subject to his claim, if judicially established. There was no effort to show that appellant, or any one or more of its agents, joined, or sought to join, in establishing a fictitious or fraudulent claim. If, as Frank Bokoski alleged in the Wisconsin suit against the appellee undertaking company, the latter party had, under circumstances of duress, wrongfully extorted from him unreasonable and unjust charges for the preparation and shipment of his father's dead body, then as to such part of the exaction as was so unjust and unreasonable the undertaking company had no lawful claim. If such were the facts the undertaking company was in the situation of an extortioner, and cannot be indulged in a complaint that, but for the negligence of appellant, it could and would have been able to get possession of and enjoy the fruits of its ill-gotten gains. So that, as we think, the controlling questions for our determination go to the validity and binding effect of the Wisconsin judgments, the one establishing, or purporting to establish, Frank Bokoski's charge of extortion, and the other directing the appellant to pay part of the fund here claimed into the registry of the Wisconsin court.

Appellant thus presents the vital questions:

"Fourteenth Assignment of Error.

"The court erred in failing and refusing to give defendant's special charge No. 1, instructing a verdict in favor of the defendant, for the following reasons: (f) Because the testimony in this case further shows that the money deposited by the said Frank Bokoski with the agent of the defendant express company at New London, Wis., was garnished in a suit filed by the said Frank Bokoski against said defendant express company, and that said express company, under and by virtue of said writ of garnishment, did thereafter, within the reasonable time prescribed by law, deposit in the registry of the court, out of which said writ was sued, the sum of, to wit, $327.50, the amount deposited with it to cover the undertaker's charges, and that the testimony further shows that afterwards and in due time after the undertaking company was notified, in accordance with the laws of the state of Wisconsin, of the pendency of the said suit, styled Frank Bokoski v. North Ft. Worth Undertaking Company, and for the time required by law, the said suit was called for trial, and the said North Ft. Worth Undertaking Company failed to appear, and after the evidence was introduced a judgment was rendered in favor of the plaintiff, Frank Bokoski, against the said North Ft. Worth Undertaking Company, which together with the costs incurred in connection with the original suit and garnishment suit and the amount tendered into court here, represented the total amount deposited with this company by said Frank Bokoski to cover the undertaking charges; that in pursuance to the judgment rendered as aforesaid, in case of Frank Bokoski v. North Ft. Worth Undertaking Company, the said sum of money and all of the money except the $137.15 tendered into court, was taken by the court to satisfy the judgment of the said Frank Bokoski, rendered, as aforesaid, against the undertaking company; and the testimony further showing without dispute that this defendant had deposited in the registry of this court, and that the same has been tendered to the plaintiff herein, the said sum of $137.15, that being the balance in its hands after satisfying the said judgment of Frank Bokoski; and, it further showing that under the laws of the state of Wisconsin the express company did not have to appear and defend the cause of action or suit of the North Ft. Worth Undertaking Company, but that it was the duty of the undertaking company so to do,

this judgment and all proceedings taken now having been presented into this court, it became the duty of this court, absolutely, under such situation, and in accordance with the laws of the state of Wisconsin and of the state of Texas and of the United States, to instruct a verdict in favor of the defendant herein."

[2] The undisputed evidence shows that the court in Wisconsin in which Frank Bokoski instituted his suit against the North Ft. Worth Undertaking Company had jurisdiction of the subject-matter of that suit, and had full power to cause the issuance and service of a writ of garnishment upon appellant and its agent at New London, Wis. It is further undisputed that a writ of garnishment was issued and served upon appellant, which under the laws of Wisconsin made it the duty of appellant to deposit the fund in its possession, and claimed by appellee herein, into the registry of the court out of which the writ issued to abide the result of the suit of Frank Bokoski against appellee. This was done, and thereafter, as further shown by the undisputed evidence, the Wisconsin court formally found that Frank Bokoski's allegations of unreasonable and unjust charges on the part of the undertaking company were true, and adjudged that said charges be annulled and abated to the extent of $172.50, which, together with the further sum of $59.35, costs of suit, the appellant was, by judgment against it in the garnishee proceedings, directed to pay into court for the use of Frank Bokoski. Appellant so paid the money, and the regularity of all of these proceedings is not questioned except in the particular hereinafter stated. Indeed, the validity and binding effect of the judgment against appellant as garnishee is in no wise questioned save, as will more fully hereinafter appear, it is contended that the judgment in favor of Frank Bokoski is invalid, and that the judgment in garnishment must therefore fall with it.

[3] What then must be said of the judgment of the Wisconsin court against the appellee company in favor of Frank Bokoski? If the court which rendered that judgment had jurisdiction, under the laws of Wisconsin, over the subject-matter, which is not disputed and which is undeniably established, and obtained jurisdiction over the appellee company, which alone is denied, then nothing is more firmly established in our law than that such judgment must, in the courts of this state, be given all the force and effect that it has and had in the state of Wisconsin. The Constitution of the United States, which with us is all-pervading and all-controlling, in section 1, art. 4, declares:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

[4] It is to be observed that the "full faith and credit" enjoined by this section of the Constitution takes in not only the records and judicial proceedings, but also the public acts of another state, such as laws enacted by legislative bodies, and it is very uniformly held that in construing laws of another state they will be given that construction and effect that is given them by the courts of final resort in the state where enacted. These principles are too well known to require the citation of authority, and they are to be applied in the determination now to be made.

It was shown without question or objection that, upon service of the writ of garnishment upon appellant's agent in Wisconsin, its attorney promptly notified the appellee company of the suit of Frank Bokoski and of the service of the writ, accompanying such notice with a copy of the complaint and of the summons issued by the clerk of the court commanding the appearance of the North Ft. Worth Undertaking Company to appear at a time and place named to answer the complaint of Frank Bokoski. In this connection the undertaking company was informed that under the statutes of Wisconsin, which is verified by the proof, a garnishee was not required to appear and contest the claim of the plaintiff against the original defendant; that in this instance the express company would make no such contest, and the undertaking company was requested to do so. Of these proceedings, as we have already seen, the undertaking company was also given notice by the original answer filed in this suit by the express company months before the trials and judgments in the Wisconsin court, so that it is undeniably true that the undertaking company had actual notice of the proceedings in the Wisconsin court in ample time to make any defense to the suit of Frank Bokoski that the facts in its possession would have warranted. Under such circumstances it was proved by an expert, without objection to either the qualifications of the expert or to the competency of his testimony, that a judgment against a garnishee as in this case, preceded as hereby a judgment in favor of the plaintiff in garnishment against the original defendant, operated, under the laws of Wisconsin, as a discharge of the garnishee as to the claim of the original defendant. In illustration of this conclusion the following statute of Wisconsin, among others, and its construction by the Supreme Court of that state, was read in evidence, viz., section 2766:

"The proceeding against a garnishee shall be deemed an action by the plaintiff against the garnishee and defendant as parties defendant. * * * The judgment against a garnishee shall acquit and discharge him from all demands by the defendant or his representatives for all money, goods, effects or credits paid, delivered or accounted for by the garnishee, by force of such judgment."

In relation to which the Supreme Court of Wisconsin, in the case of Winner v. Hoyt Imp. Co., 68 Wis. 278, 32 N. W. 128, said:

"The argument at the bar was devoted largely to the question whether this section [Rev. St. § 2756] makes such service upon the defendant in the principal action jurisdictional. Prior to

the enactment requiring such service to be made upon the defendant in the principal action, embraced in the above statute, there would seem to have been no doubt but what the payment of money or delivery of property in good faith by a garnishee, in pursuance of a valid judgment of garnishment obtained without such service, was a complete protection against any subsequent claim or suit by the defendant in the principal action. Adam v. Filer, 7 Wis. 306 [73 Am. Dec. 410]. As said in this last case, such proceeding was inter partes to the record, and binding upon all the property of the defendant found within the jurisdiction of the court but, to secure such protection, it was incumbent upon the garnishee to disclose every known defense, and, if necessary, notify the defendant in the principal action of the proceeding, and in good faith afford him an opportunity to defend his title. * * * In other words, there was to be no abuse of process. The difficulties arising out of such a state of the law, as illustrated by numerous cases which might be cited, undoubtedly lead to the enactment mentioned. The manifest purpose of such enactment was not only to protect the garnishee, but to conclude the defendant in the principal action by a final determination of the rights of all parties to the property or indebtedness sought to be reached by the garnishment. Accordingly, it is provided that the defendant in the principal action may, in all cases defend against the garnishment proceedings upon any of the grounds authorized, and so the garnishee may, at his option, defend the principal action. Section 2765, R. S."

Moreover, it was proven that in accordance with sections 2639 and 2640 of chapter 120 of the Statutes of Wisconsin, a formal summons in the suit of Frank Bokoski v. North Ft. Worth Undertaking Company was issued and published for the required time commanding the "North Ft. Worth Undertaking Company" to appear and defend. The sufficiency of this "summons" and of its due service is not questioned, except as hereinafter stated, and its effect is thus stated in decisions of the Supreme Court of Wisconsin read in evidence, viz.:

In Bragg v. Gaynor, 85 Wis. 468, 55 N. W. 919, 21 L. R. A. 161, the court said:

"It has been the law in this state from a very early period that debts due to a nonresident debtor from citizens of this state are subject to garnishee process at the suit of his creditor in the courts of this state, and that such debtor can be brought into such courts by publication of summons; and, where the debt is claimed by another, he need not be summoned at all, but, in order to conclude him, it would be necessary to give him timely notice of the proceeding and to tender him the defense of it. * * * By force of statute law, as well as public policy declared thereby, and in the decisions of the courts, the situs or place where these debts are considered to be with reference to jurisdiction of our courts over them for the purpose of subjecting them to the satisfaction of debts due to a resident of this state from a nonresident, in order to protect, do justice to, and satisfy creditors resident here, is that of such resident debtor owing the same. The right to so reach and appropriate such debts for such purposes has been affirmed by numerous adjudications from the earliest period, and it is too late now to attempt to maintain the proposition that for all purposes the situs of debts so sought to be reached and applied is at the domicile of such nonresident. They are to be regarded, for the purposes of such proceedings, as property abiding or being in the domicil of the party owing them, and are as much subject to the jurisdiction and control of our courts as tangible property of a nonresident found within our jurisdiction. It cannot be disputed that tangible property so situated could be seized and applied to the satisfaction of the debts of a nonresident; and it is equally clear, as it seems to us, that debts, things in action as distinguished from things in possession, may be subjected to the equitable jurisdiction of our courts for the same purpose. The process of garnishment operates as an attachment, and fastens on such debts a lien by which they are brought under the dominion and jurisdiction of the court. * * * The property may be bound without actual service, within the jurisdiction, of process upon the owner, where the only object of the proceeding is to enforce a claim against the property specifically of a nature to bind the title. Notice of the proceeding may be given by publication, etc., as prescribed in the statute * * * and the property will be effectually bound by the judgment that may follow. * * * Garnishee process under our statute is only the equivalent of an equitable attachment, and creates a lien in like manner as by filing a bill, and is in every essential element, so far as it extends, a creditor's bill."

In Morawetz v. Sun Ins. Office, 96 Wis. 175, 71 N. W. 109, 65 Am. St. Rep. 43, the court said:

"Practically, garnishment is a seizure in the hands of the garnishee by notice to him, creating an effectual lien upon the garnished property to satisfy whatever judgment the plaintiff may recover in the suit in which it is issued. * * * So the service of garnishee papers upon the garnishee operates as an equitable levy upon such of the debtor's property and credits as were, at the time of such service, in the hands of the garnishee. * * * Jurisdiction in such cases of garnishment, where the defendant in the principal action is a nonresident, has been upheld mainly upon the ground that such proceeding is substantially in rem to subject specific property or credits to the payment of a specific debt."

[5] As against the foregoing array of the undisputed facts, and of the laws of Wisconsin relating thereto, the only objection worthy of notice that appellee urges is that, as was alleged and shown by the undisputed testimony, the North Ft. Worth Undertaking Company was a partnership composed of Geo. L. Gause and S. D. Shannon, and that the suit of Frank Bokoski and the "summons" issued therein did not give the Wisconsin court jurisdiction, or authorize the judgments in Bokoski's favor, for the reason that the individual partners, Gause and Shannon, were neither sued nor served with any character of process. The rule of decision in this state is as appellee states it; that is, that in order to authorize a judgment against a partnership or its property, all of the members of the partnership must be made parties. Frank v. Tatum, 87 Tex. 204, 25 S. W. 409; Glasscock v. Price, 92 Tex. 273, 47 S. W. 965, and numerous other cases cited in appellee's brief. In arriving at this conclusion our courts adopt the general rule announced by many authorities that suits in courts can only be maintained by and against persons, natural or artificial, that is, by or against individuals or corporations, and that unless otherwise provided by statute, a partnership is not considered a person—a legal entity—and hence must sue and be sued by its members.

An essential factor of all the Texas cases is a finding that our statutes give to a partnership, as such, no separate legal status or entity. All, however, either expressly or impliedly, recognize the fact that it may be otherwise provided by the lawmaking power. To illustrate, our court, in Frank v. Tatum, supra, said:

"California, Iowa, Ohio, Nebraska, and Alabama, and perhaps other states, have statutes which authorize suits to be brought by or against copartnerships in their firm names. The effect of such statutes is to give to the partnership recognition as 'an entity or distinct legal person distinct from its members.' Bates on Law of Part., § 1059; Newlon v. Heaton, 42 Iowa, 593; Fitzgerald v. Grimmell, 64 Iowa, 261 [20 N. W. 179]; Leach v. Milburn Wagon Co., 14 Neb. 106 [15 N. W. 232]; Whitman v. Keith, 18 Ohio St. 134; Moore & McGee v. Burns & Co., 60 Ala. 270. Proceedings under such statutes are in the nature of proceedings in rem, and judgment can be entered only against the partnership, not against the individual members of the firm. Bates on Law of Part. § 1064; Wyman v. Stewart, 42 Ala. 163."

The only questions on this feature of the case, therefore, are: Was it proven on the trial below that under the laws of Wisconsin the suit and summons against the appellee partnership were maintainable, and, under such laws, does the judgment against such partnership bind it and its property? To the extent of the garnished fund we think both questions must be answered in the affirmative. In addition to what already appears, R. L. Van Doren testified that he had been a practicing lawyer at various places in the state of Wisconsin since July, 1898; that the judgment in favor of Frank Bokoski against the North Ft. Worth Undertaking Company was rendered by the circuit court of Waupaca county, on the 16th day of November, 1909, and duly entered of record in that court; that thereafter an order was obtained by Frank Boskoski, commanding the clerk of said court, to pay—

"to the plaintiff, from the moneys deposited with him by said garnishee American Express Company, the amount of said judgment, to wit: $231.85, and that pursuant to said order, the clerk of said court paid to the plaintiff, the said Frank Bokoski, the said sum of $231.85."

The witness further testified that:

"The judgment against the defendant North Ft. Worth Undertaking Company and the judgment against the garnishee American Express Company above referred to are final judgments. Said judgments have been fully paid off as stated above, and the amount paid upon said judgment was in satisfaction of the amount of the judgment obtained by Frank Bokoski against the North Ft. Worth Undertaking Company, for $172.50 damages and $59.35 costs. * * * Under the laws of the state of Wisconsin, the judgments hereinbefore referred to are not subject to any defenses of any kind. The circuit court for Waupaca county, in which said proceedings were had and judgments entered, has the general jurisdiction prescribed by the Constitution, and in the exercise thereof it has power to issue all writs, processes, and commissions, provided therein and by statutes, which may be necessary to the due execution of the power with which it is vested. It has power to hear and determine all civil actions and proceedings and all cases of crimes and misdemeanors of every

179 S.W.—58

kind not exclusively cognizable by a justice of the peace or some other inferior court, and it has all the powers according to the usages of courts of law and equity necessary to the full and complete jurisdiction of the causes and parties and the full and complete administration of justice and to carrying into effect its judgment, orders, and other determinations, subject to re-examination by the Supreme Court as provided by law. Said court is a court of record, and is a court of general jurisdiction. The claim upon which the garnishment in this case was issued was such a claim as would support a garnishment under the laws of the state of Wisconsin. * * * The claim of Frank Bokoski against the North Ft. Worth Undertaking Company was a claim founded upon contract, and was to recover damages for the breach of the contract of said North Ft. Worth Undertaking Company to properly embalm and ship the body of his father from Ft. Worth, Tex., to New London, Wis. The circuit court of Waupaca county, in which this proceeding was pending, had jurisdiction over the North Ft. Worth Undertaking Company at the time it rendered the judgments hereinbefore referred to, to the extent of the amount of the fund in the possession of the garnishee, American Express Company, but had no jurisdiction to render any personal judgment against said North Ft. Worth Undertaking Company which could be enforced upon any property of said undertaking company outside of this state. Said court had full and complete jurisdiction over the fund involved in controversy here, to wit, the fund held by the garnishee, American Express Company, as before stated. Under the laws of Wisconsin, the American Express Company, as garnishee, was not required, nor was it its duty, to plead or prove any defense the undertaking company had to the suit of Frank Bokoski. * * * Under the laws of Wisconsin, the garnishee is protected when the statutes applicable to garnishment actions are complied with. * * * The American Express Company, garnishee in this proceeding, complied with the provisions of such statutes. * * * Under the laws of the state of Wisconsin, the North Ft. Worth Undertaking Company was a party to the garnishment proceeding. * * * Service was obtained on the North Ft. Worth Undertaking Company in this garnishment case by a publication of the summons pursuant to the laws of the state of Wisconsin. * * * The plaintiff, in the case above inquired about, proceeded under said chapter 125 of the Wisconsin Statutes of 1898, and also under the provisions of section 2639 and 2640 of the Wisconsin Statutes of 1898, which said last two sections relate to the service of a summons by publication."

The testimony of this witness, which was by depositions taken in September and December, 1909, was accompanied by copies of letters, of the summons to the appellee company, of various statutes and decisions of Wisconsin (some of which we have quoted) and other things, which, as a whole, seem to amply support the regularity and validity of the court proceedings in Wisconsin. Nor does it appear that any objection whatever was urged to the qualification of the witness as a legal expert or to the competency of his evidence. Nor does it appear that appellee offered any testimony that conflicts in any material particular with that of the witness Van Doren, notwithstanding the fact, already shown, that his deposition had been taken in this case several years before the trial. On the whole, therefore, we find no sufficient reason to doubt the binding effect of the Wis-

consin judgments to the extent claimed, and conclude that appellant clearly established its defense and discharge as pleaded. See American Express Co. v. Mullins, 212 U. S. 311, 29 Sup. Ct. 381, 53 L. Ed. 525, 15 Ann. Cas. 536; Harris v. Balk, 198 U. S. 215, 25 Sup. Ct. 625, 49 L. Ed. 1023, 3 Ann. Cas. 1084. The peremptory instruction should have been given, and the judgment below will accordingly, be reversed and here rendered for appellant, granting to appellee, however, the right to avail itself of appellant's tender.

Reversed and rendered.